**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

JINDAN WU et al.,

                           Plaintiffs,

    -against-

SEOUL GARDEN, INC. et al.,

                           Defendants.

------------------------------------------------------------X

                                       **MEMORANDUM AND ORDER**

                                    **1:16-CV-03613 (ARR) (ST)**

**TISCIONE, United States Magistrate Judge**:

       Before this Court is a cautionary tale in discovery management. Plaintiffs' and Defendants' sloppy work has consumed judicial resources with three motions to compel. Now, discovery in this case has finally closed, and Plaintiffs have asked this Court to sanction Defendants for delaying discovery, for submitting misleading answers and documents to discovery requests, and for failing to properly respond to requests for admission. To remedy this, Plaintiffs have asked that this Court grant reasonable attorneys' fees and deem responses to requests for admission admitted. To support this request, they invoke this Court's authority under 28 U.S.C. § 1927, Rules 26, 36, and 37 of the Federal Rules of Civil Procedure, as well as this Court's inherent authority.

       For the reasons discussed below, this Court grants Plaintiffs' motion in part. Defendants will pay for the costs and attorneys' fees associated with the First and Third motions to compel. Mr. Siegert will pay for their fees and costs associated with the instant motion for sanctions. Additionally, Plaintiffs have the option of re-deposing Myong Ja Koo with the costs to be paid by Mr. Siegert, or of having Mr. Siegert pay for their costs and fees associated with her original deposition.

## BACKGROUND

The substantive claims in this case are straightforward. Defendant Natural Tofu Restaurant Corp., which is owned by Man Suh Koo and Myong Ja Koo, employed the Plaintiffs—Jin Dan Wu, Soo Jin Lee, and Jung Hee Kim. Third Amended Compl. ¶¶ 17-19, 27, 37 (Dkt. No. 26). Plaintiffs allege that during the course of their employment Defendants violated various wage, recordkeeping, and notice requirements of the New York Labor Law ("NYLL") and Federal Labor Standards Act ("FLSA"). *Id*. ¶¶ 67-94. Plaintiffs also allege that Defendants violated the anti-age discrimination prohibitions contained in the New York State Human Right's Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") by firing them in order to hire younger employees. *Id*. ¶¶ 95-104.

The substance of this dispute, however, is anything but straightforward. In waves, Plaintiffs served multiple discovery devices—two requests for production, two sets of interrogatories, and nine sets of requests for admission ("RFAs")—on Defendants, leading to three separate motions to compel. *See* Pls.' First Mot. to Compel (Dkt. No. 31); Pls.' Second Mot. to Compel (Dkt. No. 37); Pls.' Third Motion to Compel (Dkt. No. 41). Plaintiffs moved for sanctions once during discovery (*see* Dkt. No. 41) and with the instant motion they have renewed their request now that discovery has closed. *See* Pls.' Second Mot. for Sanctions (Dkt. No. 46).

Plaintiffs' grievances in the instant motion can be grouped into the following four categories: (1) Defendants delayed discovery and forced Plaintiffs to file three motions to compel; (2) Myong Ja Koo and her counsel failed to properly sign the responses to RFAs; (3) Defendants produced monthly time sheets and represented that those sheets were contemporaneous records when in fact they were summaries produced after the commencement of litigation; and (4) several of Defendants' discovery responses were false.

I.      **The Motions to Compel.**

A.  **The First Motion to Compel.**

The road to this motion began in July 2016, when counsel for the parties, Mr. Siegert for Defendants and Mr. Lim for Plaintiffs, first corresponded. *See* Dkt. No. 52 at 6. In a series of emails and letters expressing a mutual desire to settle this matter, Mr. Lim asked for and Mr. Siegert promised to provide payment records. Dkt. No. 52 at 6-11. On August 26, Mr. Lim again asked if the promised records were forthcoming, as he hoped that he could avoid drafting a formal request for production. Dkt. No. 52 at 11. Apparently, Mr. Siegert did not provide a satisfactory answer, as Plaintiffs served their first set of interrogatories, request for production, and RFA on August 29. *See* Pls.' First Request for Produc. (Dkt. No. 31-1); Plaintiffs' First Set of Interrogatories (Dkt. No. 37-1); Plaintiffs' First RFA (Dkt. No. 37-4). They then served a second RFA and request for production on November 4. *See* Pls.' Second Request for Produc. (Dkt. No. 31-2); Plaintiffs' Second RFA (Dkt. No. 37-5).

At the time, only two Defendants were in the case, Myong Ja Koo and the corporation. *See* Dkt. No. 1 ¶¶ 19-32. Plaintiffs did not specify whether the interrogatories and requests for admission were directed to Seoul Garden or Myong Ja Koo. *See* Dkt. Nos. 37-1, 37-4, 37-5.

Ultimately, Defendants responded to the interrogatories and both RFAs on behalf of Seoul Garden but not on behalf of Myong Ja Koo. *See* Dkt. No. 37 at 1-2. They never responded, however, to the request for production, with the exception that on August 31, 2016, Mr. Siegert emailed the previously promised set of "payment records." *See* Dkt. No. 52 at 12. Defendants had thirty days to respond to that first request (*see* Fed. R. Civ. P. 34(b)(2)(A)), meaning that the response was late as of September 28.

- 3 -

Plaintiffs did not press the issue until December 8, 2016—two days after the initial settlement conference—when they wrote a letter asking for the late production. *See* Dkt. No. 31-3. Defendants, however, did not comply. *See* Dkt. No. 33 at 1.

In the meantime, Plaintiffs filed the Third Amended Complaint and added the third Defendant—Man Suh Koo—on December 27, 2016. *See* Dkt. No. 26 ¶¶ 36-45. Defendants answered that complaint on January 31, 2017. Dkt. No. 29. Defendants renewed their request for the production on February 2 (Dkt No. 31-5 at 2). On February 16, the parties participated in a second settlement conference, and Plaintiffs' reiterated their request for the outstanding documents. *See* Dkt. No. 31-6. Plaintiffs followed up on the requests via phone and Defendants' counsel said that he had not received a response from his clients. Dkt. No. 31 at 2.

Plaintiffs again followed up with an email on March 2. Dkt. No. 31-7 at 2. They received no reply, and so they placed a phone call to Mr. Siegert on March 6. Dkt. No. 31 at 2. Mr. Siegert told Plaintiffs to follow up in two days and so, on March 9, Plaintiffs once again emailed Mr. Siegert. Dkt. No. 31-8 at 2. Again, having received no reply, Plaintiffs followed up by phone on March 13 and were told that they would receive a reply on March 15. Dkt. No. 31 at 2. Mr. Siegert eventually responded on March 15. Dkt. No. 31-9 at 2. His response was that Defendants possessed no other relevant documents. *Id*.

In response to this intransigence, Plaintiffs filed their First Motion to Compel on March 18, 2017. *See* Dkt. No. 31. Plaintiffs apparently did not take issue with the responses to the interrogatories or first two RFAs, as they requested no relief from this Court on either request at that time. *See* Dkt. No. 31.

- 4 -

This Court granted the First Motion to Compel in part, giving Defendants until April 28, 2017 to produce responses to all of Plaintiffs' outstanding discovery requests. Dkt. No. 35. Defendants complied. *See* Dkt. No. 37 at 1-2.

### B.  The Second Motion to Compel.

Plaintiffs renewed their liberal use of requests for admission on March 27, 2017 when they served their third RFA. *See* Plaintiffs' Third RFA (Dkt. No. 37-6). Like the previous two RFAs, Plaintiffs' Third RFA did not specify the recipient. *Id*. Defendants responded to that RFA on April 29 on behalf of the corporation but not on behalf of the other defendants, Myong Ja Koo and Man Su Koo. *See* Dkt. 37 at 2.

On May 16, 2017, Plaintiffs changed their strategy when they served their fourth set of RFAs, which were directed to specific defendants. *See* Dkt. No. 37-7 at 2, 13, 22. Defendants accordingly submitted responses from each defendant by May 26. *See* Dkt. No. 37-8, Dkt. No. 37-9, Dkt. No. 37-10, Dkt. No. 37-11.

Plaintiffs, however, were unsatisfied with the responses. On May 26, Plaintiffs wrote to request that Defendants provide "details supporting . . . denials" as well as the details supporting a failure to admit or deny. Dkt. 37-12 at 2. Plaintiffs also indicated—for the first time—that they expected Myong Ja Koo to reply to the interrogatories and first three RFAs. Dkt. 37-12 at 1-2. On May 30, Defendants wrote to dispute Plaintiffs' statement that responses to RFAs must provide a "factual basis" for denials. Dkt. No. 37-13. Plaintiffs replied that they disagreed and gave Defendants until June 2 to comply with their requests. Dkt. No. 37-3.

Plaintiffs filed their Second Motion to Compel on June 7, 2017. *See* Dkt. No. 37. In that motion, they asked this Court: (1) to order Myong Ja Koo to reply to the interrogatories; and (2) to order all three Defendants to amend the responses to the RFAs. Dkt. No. 37 at 3. They also

indicated that they believed that Myong Ja Koo had admitted to the first three RFAs by failing to provide a response. Dkt. 37 at 2.

Before the hearing on the Second Motion to Compel, however, the parties came to an amicable resolution and this court granted the motion in full, giving Defendants until July 5, 2017 to comply. Dkt. No. 40; Dkt. No. 41 at 1.

### C.  The Third Motion to Compel and First Motion for Sanctions.

Apparently, however, the parties' understanding was not mutual. Mr. Siegert believed that Plaintiffs' counsel, Kendal Sim, had agreed to receive only an amended response from Myong Ja Koo to the fourth RFA. Dkt. No. 43 at 2. Accordingly, Mr. Siegert provided Myong Ja Koo's amended response to the fourth RFA, but not a response from her to the interrogatories or an amended response from the other two defendants for the fourth RFA. Dkt. No. 41 at 2.

After Mr. Sim and Mr. Siegert discussed this new deficiency over the phone, another attorney for Plaintiffs, Sean Kwak, emailed Mr. Siegert demanding that Defendants comply with their requested relief. Dkt. No. 41 at 2. Mr. Kwak first raised this issue with Mr. Siegert on July 6, and gave him until July 10 to comply. Dkt. No. 41-2 at 2. Later that day, Mr. Kwak emailed again and moved the deadline up to July 7. Dkt. No. 41-3 at 2. As promised, Plaintiffs filed their Third Motion to Compel on July 7, in which they also asked for sanctions for "bad-faith with respect to . . . discovery obligations." Dkt. No. 41 at 2.

This Court granted Plaintiffs' motion in part, ordering Plaintiffs to specifically address their interrogatories and RFAs and for Defendants to respond accordingly. *See* Dkt. No. 44. No sanctions were imposed at that time. Dkt. No. 44.

### II.  Myong Ja Koo's Deposition.

According to the instant motion, Plaintiffs uncovered more objectionable conduct in the course of depositions.

First, during her deposition, Myong Ja Koo indicated that she was unfamiliar with the requests for admission and interrogatories that she signed, and that she was unaware that her signatures were made under the penalty of perjury. *See* Dkt. No. 46-1 at 18:5-18, 20:12-15. She even went as far as to say that she had never seen any document related to the case (*id*. at 17:24-18:4) despite the fact that she also admitted she had signed each of the RFAs and the responses to the interrogatories (*id*. at 21:15-22:7). Plaintiffs promptly gave up on questioning Myong Ja Koo, adjourning the deposition after a mere 34 minutes. *See id*. at 1, 22.

It appears that this occurred because Myong Ja Koo cannot read English, so Mr. Siegert had her daughter, Patricia Koo, go over the interrogatories and RFAs with her mother. Dkt. No. 47 at 5. Patricia Koo, for her part, insists that she did review each of the questions with her mother. Dkt. No. 47 at 4-5. Either way, Defense counsel was not present during this process, and so did not explain the legal meaning of terms in those documents or the consequences of her signature on the page. Dkt. No. 56 at 59:6-17. Given Myong Ja Koo's answers at the deposition, Mr. Siegert also apparently did not review these documents with her before her deposition.

During the hearing on the present motion, this Court ordered Defense Counsel to go over the documents with Myong Ja Koo to confirm her responses. In a preliminary ruling, this Court stated that Mr. Siegert would be sanctioned if the re-signed responses differed from the initial ones. Dkt No. 56 at 78:6-14. Defendants complied with that order and served opposing counsel with re-signed responses that do not differ from the originals. Dkt. No. 52 at 1.

### III.    Monthly Pay Record Summary Documents.

According to the instant motion, Plaintiffs learned during Patricia Koo's 30(b)(6) deposition that some of the records of payment produced during discovery—the "monthly sheets"—were in fact prepared after the commencement of this litigation in order to summarize

relevant business records. Dkt. No. 46-12 at 50:14-23. Defendants maintained in their opposition to the motion for sanctions that the summaries were produced after Plaintiffs asked for clarification of the initial business records that were produced on August 29, 2016. *See* Dkt. No. 47 at 3-4. Defendants stood by this representation in the motion hearing before this Court. *See generally* Dkt. No. 56. However, Mr. Siegert did not arrive at the hearing prepared with his own records to corroborate his version of events. *See* Dkt. No. 56 at 21:17-20. Thus, this Court asked that Mr. Siegert submit additional information to support his position.

After reviewing his records, Mr. Siegert now admits that he did produce the summaries along with the original records all at once on August 29, 2016. Dkt. No. 52 at 3-5. It has also become apparent that Defendants did not, at any time, indicate to Plaintiffs that the monthly sheets were summaries of the contemporaneously kept records. In fact, it appears that Defendants may have affirmatively misled Plaintiffs to believe that the monthly sheets were contemporaneous records; in response to requests to admit that Defendants lacked overtime records, Defendants denied the request stating that overtime records were produced in response to discovery demands. *See* Dkt. No. 54 at 2; *see also* Dkt. No. 54-2 at 2-3.

**IV.     Inconsistent Discovery Responses.**

Finally, Plaintiffs have also complained that Defendants' discovery responses are contradictory and false. *See* Dkt. No. 46 at 1-3. In a response to one RFA, for instance, Defendants stated that Myong Ja Koo was not at the restaurant at least three days per week, but in a later deposition Defendants stated that Myong Ja Koo was frequently at the restaurant. *Id*. at 2.

## DISCUSSION

In their kitchen sink motion, Plaintiffs make two broad requests for relief. First, Plaintiffs request that Myong Ja Koo's "uncertified" responses to all of Plaintiffs' requests for admission should be deemed untimely and therefore admitted under Rule 36(a)(3). Dkt. No. 46 at 3.

Second, they ask that this Court order that Defense counsel pay "reasonable attorney's fees and costs incurred in making several discovery motions and conducting depositions, as well as granting remedies under Rule 37." ECF No. 46 at 3. They do not specify the remedies—or the wrongs—that are appropriately addressed by Rule 37. *Id*. Nevertheless, based on their motion, this Court has been able to identify three possible issues: sanctions related to the motions to compel; sanctions related to the monthly time sheets; and sanctions related to the allegedly false discovery responses.

### I.      Myong Ja Koo's Requests for Admission.

Plaintiffs argue that Myong Ja Koo's responses to their requests for admission were untimely because she and her attorney failed to properly sign them within thirty days. *See* Dkt. No. 46 at 3. The appropriate remedy, according to Plaintiffs, is for this Court to find that all of the requests for admission served on Myong Ja Koo are admitted. *Id*.

For the reasons explained below, this Court finds that Myong Ja Koo's responses were not late and fully complied with Rule 36(a)(3). Myong Ja Koo's responses comply with the plain letter of the Rule, and Plaintiffs have offered no authority that suggests otherwise. Furthermore, even if Myong Ja Koo's responses were late under Rule 36(a)(3), this Court would still find that the re-signed responses were proper.

Nevertheless, this Court does believe that the Defendants have failed to adhere to their obligations in conducting discovery and that Plaintiffs have suffered some prejudice. The manner

in which Myong Ja Koo and her attorney signed her responses before her deposition caused significant confusion and may have deprived Plaintiffs of the opportunity to meaningfully question her before the close of discovery. For that reason, this Court will order that, depending on Plaintiffs' preference, either: (1) Mr. Siegert will pay for Plaintiffs costs associated with Myong Ja Koo's deposition, or (2) that discovery will be re-opened at Mr. Siegert's expense for the limited purpose of re-deposing Myong Ja Koo.

### A. Legal Standard.

In addition to this Court's statutory (*see* 28 U.S.C. § 1927) and inherent authority (*see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)), several provisions of the Federal Rules of Civil Procedure grant this Court the power to sanction recalcitrant recipients of requests. If the recipient fails to respond, Rule 36 provides for an automatic sanction, deeming a "matter . . . admitted unless, within 30 days after being served, the party to whom the request is directed serves a written answer or objection." Fed. R. Civ. P. 36(a)(3). The rules also provide for separate remedies in the event that a party fails to provide a sufficient answer or objection (Fed. R. Civ. P. 36(a)(6)) or in the event that a party refuses to admit a true matter (Fed. R. Civ. P. 37(c)). Furthermore, if an attorney improperly certifies a request for admission, then the conduct is sanctionable under Rule 26(g) just as if the attorney had improperly certified a discovery response. *See Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1015 (2d Cir. 1988) ("The attorney's signature [on a request for admission] brings into play the sanctioning power of Rule 26(g).").

### B. Ms. Koo's Responses Were Not Untimely.

Plaintiffs have not articulated their reasoning for concluding that Myong Ja Koo's responses failed to comply with Rule 36(a)(3), but their reasoning appears to be as follows: The rules require that the recipient of an RFA serve within thirty days responses that have been "signed

by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Plaintiffs apparently believe that the signature requirement contains an implicit duty of diligence and that Myong Ja Koo's responses were not "signed" because neither Mr. Siegert nor Myong Ja Koo reviewed the responses in great—or perhaps any—detail.

Plaintiffs have offered, however, no authority to support their implicit position. The plain language of the rule only imposes three requirements on responses: (1) that they be in writing; (2) that they be served within 30 days or, failing that, within a time stipulated to by the parties or ordered by the court; and (3) that they be signed by a party or the attorney. Fed. R. Civ. P. 36(a)(3). Nowhere in that section, or any other part of Rule 36, is there a requirement that the signatory review any request for admission. Because courts "give the Federal Rules of Civil Procedure their plain meaning," *Pavelic & LeFlore v. Marvel Entm't Grp., Div. of Cadence Indus. Corp.*, 493 U.S. 120, 123 (1989), this Court declines to adopt Plaintiffs' unsupported interpretation.

Plaintiffs' gloss on the rule may have some intuitive appeal, but it is unnecessary to ensure that responses are non-frivolous. Just as the federal rules of evidence do not require parties to prepare for their sworn testimony, basic self-interest compels parties and their attorneys to carefully review responses; otherwise, they may accidentally admit to facts fatal to their case (*see* Fed. R. Civ. P. 36(b)), or they may receive sanctions for failing to admit a true matter (*see* Fed. R. Civ. P. 37(c)(2)). There is no need, then, to venture beyond the plain meaning of Rule 36(a)(3).

It appears, therefore, that Ms. Koo and her attorney were in full compliance with the rule. Ms. Koo's responses were, in fact, signed by either her or Mr. Siegert. *See* Dkt. No. 46-2 at 3-4, Dkt. No. 46-3 at 3, Dkt. No. 46-4 at 3, Dkt. No. 46-5 at 3, Dkt. No. 46-6 at 3. Given that Plaintiffs

have offered no evidence that her responses were late,[1] there is no basis to find that her responses have been admitted in their entirety.

### C. Even if they were untimely, her responses have not been admitted.

Even if, however, Ms. Koo's responses were rendered untimely by her and her attorney's failure to review them carefully before signing, it would be inappropriate to grant Plaintiffs' requested sanction. This is because "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted." *Paniagua v. Walter Kidde Portable Equip., Inc.*, 183 F. Supp. 3d 473, 482 (S.D.N.Y. 2016) (quoting *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Tripodi*, 913 F. Supp. 290, 294 (S.D.N.Y. 1996)). Rather, under "compelling circumstances the District Court may allow untimely replies to avoid the admission." *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966).

Unfortunately, the standard "for determining whether a party can avoid the stated consequences of failing to comply timely with a request for admissions has not been firmly established." *Szatanek v. McDonnell Douglas Corp.*, 109 F.R.D. 37, 40 (W.D.N.Y. 1985). Rule 36(a) expressly allows the court to extend the time to submit a reply, which some courts have read to mean that courts have discretion to excuse late replies. *See*, *e.g.*, *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Tripodi*, 913 F. Supp. 290, 293 (S.D.N.Y. 1996) (quoting *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir. 1983)). Some courts have said that Rule 6(b) governs the discretion to extend time to respond. *See*, *e.g.*, *SEC v. Batterman*, 2002 U.S. Dist.

---

[1] Plaintiffs served their fourth RFA on Myong Ja Koo on May 16, 2017 and she responded on May 24, 2017. *See* Dkt. No. 37-7 at 13-21 (Plaintiffs' fourth RFA); Dkt. No. 37-11 (Myong Ja Koo's responses to the fourth RFA). And although she did not reply within thirty days to Plaintiffs' first three sets of requests for admission, that was entirely due to Plaintiffs' failure to address their requests to specific parties. This Court ordered that Plaintiffs serve properly addressed RFAs and that Myong Ja Koo should respond by July 17, 2017 (*see* Dkt. No. 44), and she complied. *See* Dkt. No. 46-2 (punctual response); Dkt. No. 46-3 (same); Dkt. No. 46-4 (same).

LEXIS 18556, at *18-19 (S.D.N.Y. Sep. 30, 2002) (citing *Baker v. David A. Dorfman, P.L.L.C.*, 2000 U.S. Dist. LEXIS 4893, at *14-15 (S.D.N.Y. Apr. 13, 2000)). Others, however, have found that the late response to a request for admission is, in effect, an implied motion to amend the requests for admission under Rule 36(b). *See*, *e.g.*, *Gutting.*, 710 F.2d at 1313; *Tangorre v. Mayo's, Inc.*, 2002 U.S. Dist. LEXIS 2084, at *19-20 (S.D.N.Y. Feb. 7, 2002).

What is clear, however, is that some combination of the following factors is relevant: (1) whether allowing for the untimely responses would further the assessment of the merits of the case; (2) whether the opposing party would suffer prejudice; and (3) whether the response is untimely due to a lack of good faith. *See*, *e.g.*, *Colon v. Sam Tell & Son, Inc.*, 2016 U.S. Dist. LEXIS 84581, at *2-4 (E.D.N.Y. June 29, 2016) (considering all three factors in exercising discretion to extend time for party to respond to RFA); *Szatanek*, 109 F.R.D. at 39-40 (same). All of these weigh against sanctioning Myong Ja Koo with automatic admissions.

First, the RFAs include matters that are central to the case, such as Plaintiffs' earnings. *See*, *e.g.*, Dkt. No. 37-10 at 7. Thus, the "presentation of the merits clearly would be served here by permitting defendant to dispute a central issue in this case." *Tripodi*, 913 F. Supp. at 294.

Second, there is no indication that Defendants acted in bad faith. Myong Ja Koo is seventy-two years old, cannot read English, primarily speaks Korean, and has limited knowledge of the restaurant's operations. *See* ECF No. 47 at 4-5; *see also* Dkt. No. 46-1 at 9:7-14, 12:9-13:9, 14:4-15. Certainly, it is possible to conclude from her deposition that no one ever went over the RFAs with her and that instead her daughter simply told her to sign the documents. *See*, *e.g.*, Dkt. No. 46-1 at 20:25-21:6. It is equally likely, however, that Myong Ja Koo was confused by Plaintiffs' form of questioning; rather than read the questions contained in the RFAs, Plaintiffs' counsel simply showed Myong Ja Koo the documents and asked if she had seen them. *See*, *e.g.*, Dkt. No.

46-1 at 19:22-20:3. It is not surprising that Myong Ja Koo expressed unfamiliarity with documents written in a language she cannot read, and we will never know if she could have remembered the questions themselves as Plaintiffs' counsel never endeavored to refresh the recollection of a seventy-two year old, non-native speaker. *See id.*

Plaintiffs believe that the innocuous explanation is contradicted by Myong Ja Koo's statement that she never saw any document in this case (*see* Dkt. No. 46-1 at 18:23-25), but that was clearly an overstatement; Myong Ja Koo also admitted that she did in fact sign each of the documents (*see* Dkt. No. 21:15-22:7), and her statement that she did not understand the content of the documents suggests that her daughter did discuss the questions with her, even if she failed to explain them clearly (*see* Dkt. No. 20:25-21:6). At worst, then, Myong Ja Koo hired an attorney who failed to review responses with her or to prepare her for deposition. That is not bad faith conduct.

Third, Plaintiffs have suffered some prejudice due to their inability to meaningfully depose Myong Ja Koo. However, allowing them to re-depose Myong Ja Koo will cure any prejudice that Plaintiffs have suffered. *See Leier v. Lincoln Limousine Brokerage, Inc.*, 2017 U.S. Dist. LEXIS 93142, at *11-14 (E.D.N.Y. June 16, 2017) (noting that re-opening discovery can cure prejudice so long as delay is minimal). For the reasons discussed below, the Court will order that Plaintiffs may avail themselves of that limited remedy, thereby curing the prejudice.

Thus, even if Plaintiffs had shown that Ms. Koo's responses were untimely under Rule 36(a)(3), this Court would accept—under any of the above standards—her late responses.

### D.  Plaintiffs are entitled to re-depose Ms. Koo at Myong Ja Koo's expense.

Although the automatic sanction of Rule 36(a)(3) does not apply here, Defendants' conduct has not been innocuous. By signing responses without any meaningful review, Mr. Siegert misled

Plaintiffs to believe that Myong Ja Koo could substantively respond to further questioning. Indeed, going into her deposition, Plaintiffs clearly wanted to clarify some of her responses, including some purportedly inconsistent answers. *See*, *e.g.*, Dkt. No. 46-1 at 19:16-20:3. Instead, Myong Ja Koo indicated in her deposition that she was entirely unfamiliar with the RFAs (*see* Dkt. No. 46-1 at 18:5-10), leaving Plaintiffs with no basis to impeach or refresh her recollection during the deposition.

By attaching his signature to the RFAs, Mr. Siegert represented that he had complied with Rule 26(g), certifying that to the best of his knowledge the responses were "complete and correct." Fed. R. Civ. P. 26(g)(1)(A); *see also See Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1015 (2d Cir. 1988) (holding that Rule 26(g) applies to RFAs signed by attorney). It is clear that Mr. Siegert made no reasonable inquiry to support that certification, as he was not present for Myong Ja Koo's review of RFAs that required the application of facts to law. *See*, *e.g.*, Dkt. No. 37-9 at 10 (asking Myong Ja Koo to admit or deny that Plaintiffs had received written notices as required by the "Hospitality Industry Wage Order § 146-2.2(c)"). Mr. Siegert's certification was, therefore, improper and sanctionable. *Cf. Raimey v. Wright Nat'l Flood Ins. Co.*, 76 F. Supp. 3d 452, 475 (E.D.N.Y. 2014) (sanctioning attorney for violating Rule 26(g) by simply asking client for responsive document because attorney knew of possible complications). As a result, Myong Ja Koo's deposition proved to be a pointless exercise and waste of resources for Plaintiffs.

Thus, this Court believes that a remedy is necessary to cure the prejudice caused by Defendants. One of two remedies could fill that role. Mr. Siegert will either pay the costs for Myong Ja Koo's original deposition, or Plaintiffs may choose to re-depose her at Mr. Siegert's expense. That remedy will cure any prejudice suffered by Defendants' failure to conduct a reasonable inquiry before serving responses to the RFAs. *Cf. Zubulake v. UBS Warburg LLC*, 220

F.R.D. 212, 222 (S.D.N.Y. 2003) (exercising inherent authority to order party to pay the costs of re-deposing witnesses). Depending on the greater injury to Plaintiffs—waste of time and resources or the lost opportunity to depose a witness—this remedy should make Plaintiffs whole.

## II.    Delay of Discovery.

Plaintiffs also ask this court "to impose appropriate sanctions on both Defendants and Defendants' counsel and grant Plaintiffs remedies by ordering Defendants and their counsel to pay Plaintiff's [sic] reasonable attorney's fees and costs incurred in making several discovery motions." Dkt. No. 46 at 3. For the reasons outlined below, this Court will order that Defendants pay all of Plaintiffs' costs and attorneys' fees associated with the First and Third Motions to Compel.

### A.  Legal Standard.

The Federal Rules of Civil Procedure presumptively require this Court to award attorney's fees to a party that has successfully moved for an order compelling compliance with discovery obligations. Fed. R. Civ. P. 37(a)(5)(A). The movant must not receive fees, however, if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(i)-(iii). Furthermore, in the event that a motion is only granted in part and denied in part, then this court has the discretion to, "after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

Whether a party was substantially justified in resisting discovery is determined by "an objective standard of reasonableness and does not require that the party have acted in good faith." *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (quoting

*Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995)). Rather, conduct is substantially justified if there was a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the contested action. *Id*. (citing *Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006)).

### B.  The First Motion to Compel.

This Court granted in part Plaintiffs' first motion to compel on April 10, 2017. Dkt. No. 35. There was no reasonable excuse for Defendants' failure to produce the documents before then.

Plaintiffs served all of their requests by November 4, 2016 (*see* Dkt. No. 31-1 at 2; Dkt. No. 31-2 at 2) and Defendants have admitted that they did not respond to these requests for production within the required thirty days. Dkt. No. 33 at 1. Their only explanation for the months-long delay is that settlement negotiations were ongoing. *Id*. Based on the record, it is possible that settlement discussions continued at least through February 2017, when the second settlement conference was held. *See* Dkt. No. 30. But the Rules only gave Defendants thirty days to comply, and Plaintiffs tried in good faith for months to receive these documents. In addition to the notices themselves, Plaintiffs sent a letter as early as December 8, 2016, asking Defendants to comply with the (already late) requests for production. *See* Dkt. No. 31-3 at 2. Between then and filing their motion, Plaintiffs sent one other letter (Dkt. No. 31-5), three emails (Dkt. No. 31-6, Dkt. No. 31-7, Dkt. No. 31-8), and had multiple phone conversations with Mr. Siegert. Dkt. No. 31 at 2. To make matters worse, at the end of this saga, Defendants finally responded in March that there were no other responsive documents. *See* Dkt. No. 31-9.

This delay was wholly unreasonable. There was no dispute that the requests asked for responsive documents, and Defendants indicated during this odyssey that documents would be forthcoming before later contradicting those indications. That conduct is sanctionable under Rule

37(a)(5). *See Underdog Trucking, L.L.C.*, 273 F.R.D. at 377 (awarding sanctions for eight month delay in complying with discovery without any legal justification or other excuse). Defendants should, therefore, pay for Plaintiffs' costs and attorneys' fees related to the First Motion to Compel.

### C.  The Second Motion to Compel.

The Court also granted Plaintiffs' Second Motion to Compel. Dkt. No. 40. That motion asked Defendants to submit responses to interrogatories from Myong Ja Koo and to amend allegedly deficient responses to RFAs. Dkt. No. 37 at 3.

The sufficiency of the responses to the RFAs is a close call, but Defendants did have an objectively reasonable excuse for delay. Defendants would have had little to no basis to refuse the amendments requested by Plaintiffs in their *motion*. There, Plaintiffs requested two narrow amendments to the RFAs. First, they claimed that Defendants had improperly relied on the objection that some RFAs called for legal conclusions. Dkt. No. 37 at 3. Plaintiffs were correct on that front, as although some RFAs may improperly call for pure conclusions of law, Plaintiffs' RFAs fell on the proper side of the line.[2] Second, Plaintiffs asked that Defendants make a good faith inquiry into whether Myong Ja Koo or Man Suh Koo were or are "a guarantor to the lease agreement for the Restaurant's business location at 34 W 32nd Street, #2, New York, NY 10001." Dkt. No. 37 at 3. Defendants had denied those RFAs, stating simply "unknown." Dkt. No. 37-8 at 6-7; Dkt. No. 37-9 at 6; Dkt. No. 37-10 at 6. It is difficult to fathom how that response could have been the result of a reasonable, good faith inquiry.

---

[2] Each of those requests asked for Defendants to admit or deny whether they had provided the written notice required by Hospitality Industry Wage Order § 146-2.2 or received a receipt that the notice had been given as required by § 146-2.2(c). *See* Dkt. No. 37-8 at 11-13; Dkt. No. 37-10 at 10-11; Dkt. No. 37-11 at 9-10. Although these are close to legal conclusions, they are proper as they ask for an application of the facts to the law and not for a pure interpretation of the law. *See Rivers Elec. Co., Inc. v. 4.6 Acres of Land*, 1991 U.S. Dist. LEXIS 17137, at *11-12 (N.D.N.Y. Nov. 22, 1991) (finding that requests to admit that the party had an interest in a parcel of land were applications of fact to law but that requests to admit that interests in the property were subject to other property rights was a pure conclusion of law).

- 18 -

Plaintiffs' correspondence with Defendants, however, called for much more broad, and unfounded, amendments to the RFAs. In their correspondence, Plaintiffs asserted that every denial to a RFA must be supported with "*detailed reasons for each denial*." Dkt. No. 37-3 at 2 (emphasis in original); *see also* Dkt. No 37-12 at 2 (repeating that position). To put it simply, Plaintiffs were wrong. Parties need not state the specific factual basis of a denial, as RFAs are not "a discovery procedure at all. . . . [and a] party desiring to learn what the facts actually are should use other discovery devices." *Vincent v. C.O. M. House*, 2009 U.S. Dist. LEXIS 80776, at *8 (W.D.N.Y. Sep. 4, 2009) (quoting 8A Charles A. Wright et al., *Federal Practice and Procedure*, § 2252)). Plaintiffs, by insisting upon specific factual bases for denials, were attempting to improperly "avoid the limits on the number of interrogatories authorized under Rule 33(a)(1)." *Baker v. County of Missaukee*, 2013 U.S. Dist. LEXIS 154072, at *11 n.2 (W.D. Mich. Oct. 28, 2013) (citing *Gregg v. Local 305 IBEW*, 2009 WL 1325103, at * 3 (N.D. Ind. May 13, 2009)).

Thus, Defendants were well within their rights when they refused to provide specific factual bases for denials. Defendants, reasonably, told Plaintiffs that they would comply if Plaintiffs dropped the demand for factual support of denials. Dkt. No. 37-13 at 2. Rather than drop that request, Plaintiffs reiterated their demand and filed the motion to compel. *See* Dkt. No. 37-3 at 2.

Likewise, Defendants also had an objectively reasonable basis for delaying the responses to interrogatories from Myong Ja Koo, as Plaintiffs had served no interrogatories on Myong Ja Koo at that time. The rules only require that the *recipient* of the interrogatories respond. *See* Fed. R. Civ. P. 33(b)(1) ("The interrogatories must be answered . . . by the party to whom they are directed."). Plaintiffs wholly failed to direct their interrogatories to any specific party, instead styling the document "Plaintiffs' First Set of Interrogatories." Dkt. No. 37-1 at 2. Thus, given their

failure to adequately direct their interrogatories, it is entirely unclear whether Defendants had any obligation to respond at all.[3]

Therefore, this Court will decline Plaintiffs request that Defendants pay for the costs of the Second Motion to Compel, as reasonable people could have differed over the propriety of Plaintiffs' requests. *See Underdog Trucking, L.L.C.*, 273 F.R.D. at 377. Indeed, a reasonable person would have disagreed with Plaintiffs' demands, which attempted to use RFAs as improper interrogatories.

**D.  The Third Motion to Compel.**

In their third motion, Plaintiffs simply requested that Defendants comply with this Court's order on the Second Motion to Compel. Dkt. No. 41 at 2. Defendants lacked any justification to resist that that request.

To explain his recalcitrance, Mr. Siegert stated that Plaintiffs' counsel, Mr. Sim, had said "that all he needed was Mrs. Kim's amended response to the fourth admission request." Dkt. No. 43 at 2 (emphasis in original). That version of events is improbable. Plaintiffs requested much more in their second motion, and it strains credulity to believe that Plaintiffs—who relied so heavily on their RFAs—would only want amended responses from one of the Defendants. Furthermore, it appears that Mr. Sim does not share Mr. Siegert's recollection, as he discussed the matter on the phone with Mr. Siegert before Mr. Kwak later emailed with Plaintiffs' demands. *See* Dkt. No. 41-2 at 2. Finally, even if Mr. Siegert did believe that Mr. Sim agreed to limited relief,

---

[3] It is true that Plaintiffs, in good faith, asked Defendants to submit responses to the interrogatories from Myong Ja Koo nearly a month before they filed their second motion to compel (Dkt. No. 37-2 at 2) and once again a week before (Dkt. No. 37-3 at 3). But Defendants implicitly offered to comply with that request on the condition that Plaintiffs drop their unsupported demands related to the RFAs. Dkt. No. 37-13 at 2.

the Court's order did not reflect any limited agreement that was narrower than Plaintiffs' requested relief in their second motion to compel.

Thus, Defendants should have complied with this Court's order and served amended responses to the RFAs from the other two defendants and a response to the interrogatories from Myong Ja Koo. It was unreasonable of them not to do so in the first instance, and even more so after Mr. Kwak emailed on July 6. Defendants should pay the costs and attorneys' fees for the third motion to compel.

### III.    Summary Documents.

Lastly, Plaintiffs have accused Defendants of "producing manufactured records." Dkt. No. 46 at 2. Because the Court does not believe that Defendants intended to represent the monthly summaries as contemporaneous business records, the Court will not order harsh sanctions such as default judgment. Mr. Siegert did, however, conduct discovery in a negligent fashion, and so this Court will order him to pay for the attorneys' fees associated with this motion for sanctions.

### A.  Legal Standard.

In addition to this Court's inherent and statutory power to sanction bad faith conduct, two rules provide this Court with the authority to sanction a party for providing inaccurate and misleading discovery responses.

Rule 37(d)[4] "has been interpreted to encompass responses which are evasive or misleading." *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1031 n.1 (5th Cir. 1990) (citing

---

[4] Although Rule 37(d) refers only to requests for inspection, and not to requests for production, that is merely a reflection of the outmoded language used by Rule 34 to refer to modern discovery methods. *See Hostnut.Com, Inc. v. Go Daddy Software, Inc.*, 2006 U.S. Dist. LEXIS 64098, at *5 n.4 (D. Ariz. Sep. 6, 2006). Rule 37(d) does, in fact, apply to requests for production. *Id.*

*Basch v. Westinghouse Electric Corp.*, 777 F.2d 165 (4th Cir. 1985)).[5] That rule allows courts to impose any sanction authorized under Rule 37(b)(2)(A)(i)-(vi). *See* Fed. R. Civ. P. 37(d)(3).

Alternatively, Rule 26(g) authorizes courts to sanction parties for failing to confirm that "to the best of their knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a disclosure, it is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1). If parties violate that rule without substantial justification, courts must order appropriate sanctions with remedies including "an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

Regardless of the basis, "[u]pon finding that false information has been communicated, the court must determine whether the communicating party should be sanctioned." *Morris v. McMaster-Carr Supply Co.*, 2002 U.S. Dist. LEXIS 10484, at *6-7 (N.D. Ill. June 6, 2002). Because "[p]arties must take reasonable steps to ensure that they provide complete and accurate information in discovery. . . . negligence or inadvertence, not just bad faith or willfulness, is sanctionable." *Id.* (citing *EEOC v. Sears, Roebuck & Co.*, 114 F.R.D. 615, 626 (N.D. Ill. 1987)).

---

[5] There is a split in authority over this issue. *See* 7-37 Moore's Federal Practice - Civil § 37.91 (2017). Some Courts have said that Rule 37(d) does not apply to instances of inadequate responses to requests for production. *See*, *e.g.*, *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1339-1340 (9th Cir. 1985); *Laclede Gas Co. v. G.W. Warnecke Corp.*, 604 F.2d 561, 565 (8th Cir. 1979); *Maritime Ventures Int'l v. Caribbean Trading & Fidelity, Ltd.*, 689 F. Supp. 1340, 1358 (S.D.N.Y. 1988). Others disagree, finding that  a court may use Rule 37(d) to sanction a party for incomplete, misleading, or inadequate disclosures. *See*, *e.g.*, *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995); *Coane*, 898 F.2d at 1031 n.1; *E.E.O.C. v. Sears, Roebuck & Co.*, 114 F.R.D. 615, 626 (N.D. Ill. 1987); *Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145 n.5 (N.D. Ill. 1982).

This Court sides with the latter position, as a district court has "wide discretion in imposing sanctions under Rule 37." *Horti Ams., LLC v. Steven Produce King, Inc.*, 2017 U.S. Dist. LEXIS 13058, at *5-6 (E.D.N.Y. Jan. 27, 2017) (quoting *S.E.C. v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013)). Because misleading documents are often as good as no production at all and may significantly confuse opposing parties and delay litigation, this Court believes that the production of misleading discovery is sanctionable under Rule 37(d). *See Morris v. McMaster-Carr Supply Co.*, 2002 U.S. Dist. LEXIS 10484, at *6 (N.D. Ill. June 6, 2002) (finding that false information contained in answers to interrogatories is sanctionable under Rule 37(d) because in "some ways, giving a false answer is worse than no answer") (quoting *Evanson v. Union Oil Co.*, 85 F.R.D. 274, 277 (D. Minn. 1979)).

The "degree of culpability, however, bears on the type of sanction that is imposed." *Id.*; *see also* Fed. R. Civ. P. 37, Advisory Committee Notes to 1970 Amendment ("In view of the possibility of light sanctions, even a negligent failure should come within Rule 37(d).").

**B.  Defendants did not act in bad faith.**

Plaintiffs accuse Defendants of "producing manufactured records." Dkt. No. 46 at 2. In their view, Defendants manufactured more complete payment records in order to defeat Plaintiffs' claims. Dkt. No. 54 at 1-2. The monthly sheets, for example, indicate that Defendants had records showing how Plaintiffs were compensated for overtime. *Id.* at 2. Even worse, Defendants asserted in response to RFAs that they had records of overtime hours worked, despite the fact that the only documents that appear to indicate overtime hours were the monthly summaries. *See* Dkt. No. 54-2 at 3; *see generally* Dkt. No. 49-1 (sample of payment records).[6] That misrepresentation was significant, as a plaintiff's burden of proof is lessened in FLSA cases if the defendant's records were inadequate. *See Aponte v. Modern Furniture Mfg. Co.*, 2016 U.S. Dist. LEXIS 131408, at *25-26 (E.D.N.Y. Sep. 24, 2016).

Nevertheless, Plaintiffs have failed to show that Defendants acted in bad faith. The record is simply not consistent with a deliberate scheme to deceive Plaintiffs. Patricia Koo readily admitted in her deposition, for example, that Defendants had a cashier prepare the summaries in order to clarify the records for Plaintiffs. *See* Dkt. No. 46-12 at 50:15-52:11. And Mr. Siegert, for his part, appears to have been completely confused by the documents. In Patricia Koo's deposition, he asserted, for example, that Defendants produced the summaries after Plaintiffs asked for

---

[6] It is possible that the contemporaneous business records could be used to extrapolate overtime information, although Defendants have not offered any explanation of how. Either way, Plaintiffs would reasonably have believed that the response to the RFAs were referencing the monthly sheets, as those are the only documents that break out the distinction between regular and overtime payments. Defendants should have  known that would be the natural inference from their response to the RFAs.

clarification. Dkt. No. 46-12 at 51:10-13. He said this even though Defendants apparently relied upon those summaries to deny some earlier requests for admission. *See* Dkt. No. 54-2 at 3.

Instead, a more innocuous explanation fits the facts. It appears that at some point, at counsel's request, Defendants prepared the summary records and gave them to Mr. Siegert. *See* Dkt. No. 47 at 6; Dkt. No. 52 at 4. Mr. Siegert's assistant then handled the specifics of producing the records. Dkt. No. 52 at 4. For some reason—perhaps because he did not review the discovery himself, or perhaps because he did not realize that the monthly records were in fact summaries— Mr. Siegert did not know that the summaries were produced in August. Thus, at the hearing, he believed that the summaries were produced later, perhaps because in September he corresponded with Plaintiffs' counsel and promised a summary "spread sheet" that never materialized. *See* Dkt. No. 52 at 18. Mr. Siegert's confused performance at the hearing corroborates this sequence of events. *See generally* Dkt. No. 56.

To be sure, the non-insidious explanation is still troubling. Plaintiffs have only narrowly avoided any prejudice caused by Defendants' inability or unwillingness to carefully collect, document, and transmit production. But Defendants were at most negligent. The Court cannot, therefore, sanction Defendants under its inherent authority or 28 U.S.C.S. § 1927. *See Homkow v. Musika Records, Inc.*, 2009 U.S. Dist. LEXIS 21537, at *10 (S.D.N.Y. Mar. 17, 2009) (declining to sanction attorney under statutory or inherent authority because movant had shown at most that the attorney "did a woefully inadequate job of investigating his client's assertions").

### C.   Defendants Negligent Conduct is Sanctionable under Rule 37.

Defendants' negligent conduct during discovery, however, is still sanctionable under Rule 37. The prejudice speaks for itself. Defendants produced summary documents to Plaintiffs and represented that those were "records of payment." Dkt. No. 52 at 12. Plaintiffs reasonably relied

on that false representation for nine-and-a-half months until Patricia Koo informed them of the truth towards the end of her deposition. *See* Dkt. No. 46-12 at 50:14-17. During that time—while Plaintiffs engaged in settlement negotiations, crafted requests for admission, and prepared for depositions—Plaintiffs falsely believed that Defendants had prepared these records contemporaneously, meaning that the records were admissible evidence for summary judgment and trial.

Defendants offer meek excuses. Mr. Siegert says that he is a solo practitioner who occasionally relies upon a "per diem, elderly, Chinese woman . . . to perform ministerial duties." Dkt. No. 52 at 4 n.2. But that is no defense. *Cf. Baldwin v. United States*, 2016 U.S. Dist. LEXIS 72152, at *4 (W.D.N.Y. June 2, 2016) ("The challenges of a solo practice are well known . . . but solo practice by itself does not excuse procedural problems."); *Jones v. E. Hartford Police Dep't*, 2014 U.S. Dist. LEXIS 166566, at *3 (D. Conn. Dec. 2, 2014) ("Although the Court appreciates the burdens faced by many solo practitioners . . . this does not excuse complete neglect of all deadlines."). After all, even if Mr. Siegert's assistant mailed discovery to Plaintiffs, he had an obligation to supervise her work.

This pattern of mistakes—in the production, the RFAs, and at the hearing—gives the impression that Mr. Siegert never reviewed these documents or thought about their provenance. Thus, whatever the specific explanation, Mr. Siegert's conduct was negligent and sanctionable. *See EEOC*, 114 F.R.D. at 627 (sanctioning plaintiff under Rule 37(d) after finding that the plaintiff "negligently tendered to Sears incomplete, outdated and misleading data in response to a clear discovery request. Sears could not have discovered, and did not discover, the problem with the tendered computer printouts until after it had analyzed the printouts and used them in expensive computer runs to prepare trial testimony and exhibits, and questions for the cross-examination of

at least one EEOC expert witness."); *see also Coane*, 898 F.2d at 1032 (affirming sanctions under Rule 37(d) for mistakenly producing an incorrect version of a liability release); *Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165, 174-75 (4th Cir. 1985) (affirming sanctions under Rules 11 and 37(d) for misleading opposing counsel with interrogatory answers to believe that a fact witness would be an expert witness).

Fortunately for both parties, Plaintiffs do not appear to have suffered great prejudice; they did not settle the matter under false pretenses and they uncovered the misleading nature of the documents while discovery was still ongoing. Thus, the Court will order that Mr. Siegert pay for Plaintiffs' attorneys' fees and costs associated with this motion for sanctions, as it was his failure to communicate the true nature of the documents to Plaintiffs' counsel that created the ensuing confusion.

## IV.   The Allegedly False Responses.

Under Rule 37(c)(2), this Court may order a party that fails to admit a matter to "pay the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2). Plaintiffs allude to this remedy in their motion, pointing to a series of allegedly false statements made in interrogatories, depositions, or responses to RFAs. Dkt. No. 46 at 1-2.

Plaintiffs have failed to substantiate their allegations. Many of the alleged inconsistencies appear to stem from Plaintiffs' abuse of RFAs, which are not conducive to information gathering precisely because they call for a straight admission or denial. *See Saliga v. Chemtura Corp.*, 2013 WL 6097100, at *3 (D. Conn. Nov. 20, 2013) (quoting *Russo v. Baxter Healthcare Corp.*, 51 F. Supp.2d 70, 79 (D.R.I. 1999)) ("Requests for admissions are not intended for factual discovery that should be done through interrogatories and depositions. They are a cruder device because a party may accept, deny or object to facts phrased by the opposition."). For example, despite their

protestations, it was not at all inconsistent for the corporate Defendant to respond that Myong Ja Koo was not present at the business location at least three days per week in response to an RFA, and later say that she was there frequently during certain time periods. *See* Dkt. No. 46 at 2. Plaintiffs could have avoided the confusion if they had used a proper discovery device, or if they had tailored their question to refer to a specific time period. *See* Dkt. No. 52 at 2.

Thus, this Court will not grant any sanctions under Rule 37(c)(2) at this time. Because some of the alleged inconsistencies Plaintiffs raise are manifestly consistent with one another, the Court declines to sift through every grievance raised in Plaintiffs' motion. *Cf. Tylena M. v. Heartshare Human Servs.*, 2004 WL 1252945, at *3 (S.D.N.Y. June 7, 2004) (denying motion for sanctions because the moving party failed to cite any legal authority in support of its application). If Plaintiffs can prove at a later date that Defendants failed to admit a true matter, then they may be entitled to further sanctions at that time.

## CONCLUSION

For the reasons detailed above, this Court orders the following: (1) Plaintiffs may choose to re-open discovery for the limited purpose of re-deposing Myong Ja Koo at Mr. Siegert's expense, or this Court will order that Mr. Siegert will pay for their costs and fees associated with her original deposition; (2) Defendants will pay for Plaintiffs' costs and attorneys' fees associated with the First and Third motions to compel; (3) Mr. Siegert will pay for Plaintiffs' costs and attorneys' fees associated with the instant motion for sanctions. If the parties cannot agree on the amount of attorneys' fees and costs to be paid, then Plaintiffs should submit a letter motion with accompanying records for this Court's approval.

**SO ORDERED.**

/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
         January 22, 2018