UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                       :
                                       :

JINDAN WU; SOO JIN LEE; and JUNG HEE KIM,     :

                Plaintiffs,                   :

                                       :       16-cv-3613-ARR-ST

     -against-                               :

                                       :       <u>NOT FOR ELECTRONIC</u>
                                       :       <u>OR PRINT PUBLICATION</u>

NATURAL TOFU RESTAURANT CORP. d/b/a      :
SEOUL GARDEN RESTAURANT; MYONG JA KOO;    :       <u>OPINION & ORDER</u>
and MAN SUH KOO,                            :

               Defendants.                :

                                       :

------------------------------------------------------------------- X

ROSS, United States District Judge:

       Plaintiffs bring this suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*,

and New York Labor Law (NYLL), alleging, among other things, minimum wage and overtime

violations on the part of defendant restaurant and its owners. Plaintiffs have moved for summary

judgment. For the reasons discussed below, the motion is granted in part and denied in part.

## BACKGROUND

       Plaintiffs Jindan Wu, Soo Jin Lee, and Jung Hee Kim are former waitresses at Seoul Garden

Restaurant, which is registered as Natural Tofu Restaurant Corp. with the New York Department of

State Division of Corporations.[1] Pls.' Statement ¶ 1. Kim began working for the defendants on

December 23, 1998, Lee on September 5, 2011, and Wu on March 5, 2012. Id. ¶¶ 3-5. All three ended

---

[1] Unless otherwise noted, the following facts are undisputed and refer to the time period between 2010 and
2016. Statement of Undisputed Material Facts ("Pls.' Statement"), ECF No. 63-2; Response to Plaintiff's
Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs.' Statement"), ECF No. 67.

their employment on June 25, 2016.  Id. ¶ 7.  Four days later, they filed suit against Seoul Garden and

one of its owners, Myong Ja Koo ("Mrs. Koo").  Compl., ECF No. 1.  Her husband, Man Suh Koo

("Mr. Koo") was later added to the suit.  Third Am. Compl., ECF No. 26.

### 1. Work Conditions and Wages

While they worked for defendants, each plaintiff was paid "house pay"—a set amount based

on whether she worked a half or a full day—plus tips.  Pls.' Statement ¶ 10.  Kim received $65.00 in

house pay per full day and $32.50 per half day.  Id. ¶ 14.  Lee received $50.00 per full day and $25.00

per half day.  Id. ¶ 13.  Wu received $55.00 per full day and $27.50 per half day.  Id. ¶ 12.

Defendants maintained contemporaneous scheduling records starting in late 2012, which

indicate if plaintiffs worked a full or half day.  Pls.' Statement ¶ 11; see also Pls.' Mot. Summ. J. ("Pls.'

MSJ"), Ex. A ("Ex. A"), ECF No. 63-4 (weekly schedules).  In these records, a circle indicates a full

day and a triangle indicates a half day.  Pls.' Statement ¶ 11.  According to plaintiffs, a full day consisted

of twelve hours of paid work, and a half day seven.  Id.  Defendants claim, however, that plaintiffs

had two hours of unpaid free time each full day, and one hour of unpaid free time each half day.

Defs.' Statement ¶ 11; Decl. of Man Suh Koo ("Mr. Koo Decl."), ECF No. 65, at ¶ 3.

Defendants also maintained contemporaneous pay records, which list the wages each plaintiff

received for each work week.  Pls.' Statement ¶ 17; see also Pls.' MSJ, Ex. B ("Ex. B"), ECF No. 63-

6 (Wu); Pls.' MSJ, Ex. C ("Ex. C"), ECF No. 63-7 (Lee); Pls.' MSJ, Ex. D ("Ex. D"), ECF No. 63-8

(Kim).  Because the number of whole and half days plaintiffs worked varied each week, so did their

weekly pay.  Kim generally received between $300 and $400 per week, Wu between $150 and $250,

and Lee between $100 and $200.  See Exs. B-D.  Plaintiffs were not provided any additional pay for

working shifts that ended more than ten hours after they began.  Pls.' Statement ¶ 16.  While there are

no contemporaneous records for 2010 through late 2012, plaintiffs work schedule and compensation

was substantially similar during that time period.  Id. ¶ 27.

Plaintiffs also received tips throughout their employment.  Id. ¶ 19.  The amounts they received are not in defendants' contemporaneous records.  See Exs. A-D.  There are tip amounts listed in the payment summaries prepared by defendants during the litigation.  Pls.' MSJ, Ex. E ("Ex. E"), ECF No. 63-9 (Wu); Pls.' MSJ, Ex. F ("Ex. F"), ECF No. 63-10 (Lee); Pls.' MSJ, Ex. G ("Ex. G"), ECF No. 63-11 (Kim); see also Letter from P. Siegert, ECF No. 47, at 4; Pls.' MSJ, Ex. Y ("Ex. Y"), ECF No. 63-29, at 50:14-23 (Rule 30(b)(6) deposition of Patricia Koo).  But defendants have also stated they have "no record of tips," because Kim had "exclusive control over tips and [their] distribution to the actual exclusion of the employer."  Decl. Paul W. Siegert ("Siegert Decl."), ECF No. 64, at ¶ 8 (p. 7); see also Ex. Y at 56:23-57:3.  Defendants do not explain the source of the tip numbers in Exhibits E through G.

On some days, plaintiffs worked in the kitchen instead of as waitresses.  Pls.' Statement ¶ 15.  Plaintiffs state that this was "rare" and that, when it occurred, they "were compensated at twice their regular house pay."  Id.  Defendants respond that "Wu and Lee worked in the kitchen on many (sometimes two days per week) occasions and got compensated at the rate of $100 per day."  Defs.' Statement ¶ 15.  The contemporaneous scheduling records indicate the days when plaintiffs worked in the kitchen with a circle followed by the number "100."  Id.

In addition to her waitressing duties, Kim coordinated the wait staff's schedules and at least assisted in their hiring and firing.  Pls.' Statement ¶ 6; Defs.' Statement ¶ 6.  According to defendants, she also set the wait staff's pay and controlled the distribution of tips.  Siegert Decl. ¶ 8 (p. 6-7).

## 2.     Notice

Defendants never provided plaintiffs any written notice relating to the conditions of their pay.  Pls.' Statement ¶¶ 8, 48.  Nor did defendants provide plaintiffs wage statements with each payment of wages.  Id. ¶¶ 9, 49.  And defendants did not inform plaintiffs of the tip credit provisions of the FLSA or NYLL.  Id. ¶ 21.

Before this litigation, defendants did not consult any experts or attend any workshops or seminars to understand their federal or state labor law obligations. Pls.' Statement ¶¶ 43-44. They were not aware of the conditions under which an employee could be considered to be working in a bona fide executive capacity. Id. ¶ 46. Nor were they aware of New York Labor Law's spread-of-hours requirement. Id. ¶ 47. Similarly, they were not aware of New York Labor Law's requirements that employees be provided wage statements and written notice of pay conditions. See Siegert Decl. ¶¶ 5-6. It is unclear whether defendants knew how to calculate overtime compensation. See Pls.' Statement ¶ 45; Defs. Statement ¶ 45. Seoul Garden's corporate representative, Patricia Koo, said that she did not know how, but said that her father, Mr. Koo, might. Ex. Y at 53:23-54:6. Defendants did, they claim, post a wage chart of some kind at the restaurant. Siegert Decl. ¶ 10; Mr. Koo Decl. ¶ 11.

### 3. Mr. and Mrs. Koo's Personal Involvement in the Restaurant

From 2010 to 2016, Mr. and Mrs. Koo each had fifty-percent ownership of Seoul Garden. Pls. Statement ¶¶ 50, 60. They both had the authority to sign checks on behalf of the restaurant, id. ¶¶ 54, 63, and both have signed the corporate tax returns, id. ¶¶ 57, 64. Plaintiffs state that Mrs. Koo continues to sign the tax returns, id. ¶ 64, while defendants suggest that she has not signed them in at least seven years, see Defs.' Statement ¶ 64; Decl. of Myong Ja Koo ("Mrs. Koo Decl."), ECF No. 66, at ¶ 4.

Mrs. Koo opened Seoul Garden in May 1998 and managed it until her husband joined the business in 2000. Pls.' Statement ¶¶ 58-59. Her signature appears on the liquor license, id. ¶ 62, and the building lease, which is in Natural Tofu Restaurant Corp.'s name, id. ¶ 61; Defs.' Statement ¶ 61. In the past, she has hired and fired employees and set wages, although defendants say that she has not done so since 2000. Pls.' Statement ¶¶ 67-68; Defs.' Statement ¶¶ 67-68. Between 2010 and 2016, she came to the restaurant three to seven times a week. Pls.' Statement ¶ 65. Defendants state that

those visits were primarily for social purposes.  Mrs. Koo Decl. ¶¶ 8-9.  Plaintiffs contend that if Mrs. Koo saw an employee do something wrong, she would "instruct Kim, Man Suh Koo, or Patricia Koo to correct the issue."  Pls.' Statement ¶ 66.  According to Mrs. Koo, however, "[i]f there was something wrong, [she] may have called it to the attention of Kim or a family member, but [she] didn't instruct or dictate."  Mrs. Koo Decl. ¶ 9.

Since 2000, Mr. Koo has been "involved in managing the restaurant on a daily basis."  Pls.' Statement ¶ 55.  Except when he was on vacation, he was at the restaurant "nearly every day."  Id. ¶ 56.  He had the power to hire and fire employees of the restaurant, id. ¶ 51, and did hire and fire the kitchen and office staff, Ex. Y at 20:23-24.  He also had the power to control employees' wages and the terms and conditions of their employment.  Pls.' Statement ¶¶ 52-53.

### 4.  Procedural Background

Plaintiffs allege the following violations in their operative complaint: First, they allege that defendants failed to pay them the minimum wage required by the FLSA and NYLL.  Third Am. Compl., ECF No. 26, at ¶¶ 67-74 (p. 9), 70-74 (p. 10).  Second, they allege that defendants failed to pay them overtime as required by the FLSA and NYLL.  Id. ¶¶ 65-69 (p. 10), 75-79.  Plaintiffs also allege that defendants violated the NYLL by failing to: pay them spread-of-hours wages, id. ¶¶ 80-83, provide them with written notice of the pay conditions at the time of hiring, id. ¶¶ 84-86, provide wage statements with each wage payment, id. ¶¶ 87-89, or pay them in a timely fashion, id. ¶¶ 90-94.[2]  Plaintiffs moved for summary judgment on all but their timely payment claims, which they appear to have dropped, as their summary judgment motion makes no mention of it.  Pls.' MSJ, ECF No. 63.  For the reasons discussed below, summary judgment is granted in part and denied in part.

---

[2] Plaintiffs also included claims for age discrimination under the New York State and City Human Rights Laws in their Third Amended Complaint, but agreed to drop these claims on October 10, 2017.  Letter to Judge Ross from K. Sim, ECF No. 61.

# DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that she "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In performing this analysis, I must resolve all ambiguities in favor of the non-moving party. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper." Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

The moving party may show that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo, 22 F.3d at 1223-24 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010)). If "no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." Id. (quoting Great Am. Ins. Co., 607 F.3d at 292).

## I. Claims

### A. Minimum Wage and Overtime

Plaintiffs have moved for summary judgment on their FLSA and NYLL minimum wage and overtime claims. For the reasons discussed below, I grant summary judgment on these claims as to liability.

#### 1. Exempt Employees

Defendants argue that plaintiff Kim is exempt from the FLSA and NYLL's minimum wage and overtime protections, because she worked in a bona fide executive capacity. For the reasons discussed below, I hold that she is not exempt and therefore benefits from the same wage-and-hour protections as plaintiffs Wu and Lee.

Under the FLSA, the minimum wage and overtime provisions do not apply to "any employee in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). An employee works in a bona fide executive capacity if (1) she is "[c]ompensated on a salary basis at a rate of not less than $455 per week," (2) her "primary duty is management of the enterprise in which [she] is employed," (3) she "customarily and regularly directs the work of two or more other employees," and (4) she "has the authority to hire or fire other employees or [her] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). An employee is paid on a salary basis when, each pay period, she is paid "a predetermined amount," "not subject to reduction because of variations in the quality or quantity of work performed." Id. § 541.602(a).

Under the NYLL, as with the FLSA, the minimum wage and overtime provisions do not apply to individuals who work in a "bona fide executive capacity." 12 N.Y.C.R.R. § 146-3.2(c)(1)(i).[3] The

---

[3] The Hospitality Industry Wage Order governs most of the state law claims discussed in this opinion. Multiple

NYLL's requirements for working in a bona fide executive capacity are the same as the FLSA's, except the NYLL has a higher salary threshold and requires that the employee customarily and regularly exercise discretionary powers. Under New York law, work done in a "bona fide executive capacity" is work done by someone "(a) whose primary duty consists of the management of the enterprise in which [she] is employed," "(b) who customarily and regularly directs the work of two or more employees," "(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight," "(d) who customarily and regularly exercises discretionary powers," and "(e) who is paid for [her] services a salary of at least: (1) $543.75 per week . . . on or after January 1, 2011; (2) $600.00 per week . . . on and after December 31, 2013; (3) $656.25 per week . . . on and after December 31, 2014; [and] (4) $675.00 per week . . . on and after December 31, 2015." Id. § 146-3.2(c)(1)(i)(a)-(e) (effective Dec. 31, 2015). The test for when an employee is paid a salary has been assumed to be the same under the NYLL as it is under the FLSA. See Kahn v. Superior Chicken & Ribs, Inc., 331 F. Supp. 2d 115, 117 (E.D.N.Y. 2004).

Kim was not an employee working in a bona fide executive capacity under the FLSA or the NYLL, because she was not compensated on a salary basis. According to defendants, "Kim set her own salary" and took home tips on top of that. Siegert Decl. ¶ 8 (p. 6). Defendants make no argument, however, as to why Kim's pay constituted a salary. Kim was not paid a predetermined amount each pay period—her pay could and did vary each week depending on the quantity of work

---

versions of this rule were in effect from 2010 to 2016. Until January 11, 2011, it was called the Minimum Wage Order for the Restaurant Industry and codified at 12 N.Y.C.R.R. § 137. Since then, it has been codified at 12 N.Y.C.R.R. § 146. It was amended on December 31, 2013 and December 31, 2016. The general principles have been largely the same throughout all versions, although the basic minimum hourly rate, the minimum cash wage, and the minimum salary for exempt employees have changed over time. When only the most recent version is cited in this opinion, it indicates that the same requirement has been in effect in all versions for the relevant time period. When a provision (like the minimum salary for exempt employees) is drawn from a particular version, that information is indicated parenthetically.

performed (and, because she collected tips, potentially on the quality of work performed as well).  See Exs. D, G.  Even drawing all reasonable inferences in favor of defendants, Kim was not paid on a salary basis.  She cannot, therefore, have worked in a bona fide executive capacity.  She is thus entitled to the protections of the minimum wage and overtime provisions of the FLSA and the NYLL.

### 2. Minimum Wage

Plaintiffs argue that they were not paid the federal or state minimum wage.  For the reasons discussed below, I agree that defendants failed to pay plaintiffs the minimum wage.  But because the exact amount of underpayment depends in part on a disputed issue of fact—specifically, how many hours of each shift were paid versus unpaid—it cannot be resolved on summary judgment.

Both the FLSA and NYLL set basic minimum hourly rates that employers must pay their nonexempt employees.  Under federal law, the rate is $7.25 an hour.  29 U.S.C. § 206(a)(1)(C).  Under New York law during the time at issue in this case, the rate was between $7.25 and $9.00 an hour.[4] Tipped employees, however, may be paid a lower hourly rate, provided certain conditions are met. Specifically, an employer may count tips towards the minimum wage if (1) the employer has provided the employee with the appropriate notice, (2) the employee has been paid a minimum cash wage, and (3) the tips and the cash wage combine to at least equal the basic minimum hourly rate.  See 29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 146-1.3(b).  The federal minimum cash wage is $2.13 per hour, making the maximum tip credit $5.12 per hour.  Wage and Hour Division, U.S. Dep't of Labor, Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("D.O.L. Fact Sheet #15"), at 1 (revised December 2016).  The state minimum cash wage was between $4.65 and $7.50 per hour for

---

[4] The minimum wage was $7.25 until December 30, 2013.  12 N.Y.C.R.R. § 137-1.2(e).  From December 31, 2013 until December 30, 2014, it was $8.00.  From December 31, 2014 until December 30, 2015, it was $8.75 an hour.  And from December 31, 2015 to December 31, 2016, it was $9.00 an hour.  Id. § 146-1.2(a) (effective Dec. 31, 2015); id. § 146-1.2(a) (effective Dec. 31, 2016).

food service employees during the years at issue in this case—the maximum tip credit varied accordingly.[5]

Under both federal and state law, an employer may only count a tip credit towards its minimum wage obligations if it has provided its tipped employees with notice of the tip credit provisions of the law.  See 29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 146-1.3.  Under the FLSA, this notice may be written or oral and must include: (1) the cash wage being paid to the employee, (2) the amount being claimed as a tip credit, (3) a statement that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee, (4) a statement that all tips received by the employee are to be retained by them except for a valid tip pooling arrangement, and (5) a statement that the tip credit cannot be used unless the employee has been informed of these tip credit provisions.  See D.O.L. Fact Sheet #15, at 1-2.  Under the NYLL, employers must provide written notice to employees at the beginning of their employment stating "the amount of tip credit" and that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate."  12 N.Y.C.R.R. § 146-2.2(a).  The employer must also keep an acknowledgement of receipt, signed by the employee, on file for six years.  Id. § 146-2.2(c).

The burden is on the employer to prove compliance with the notice requirements.  Id. § 146-2.2(d); Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015).  Defendants cannot meet this burden.  In fact, they admit that they never provided notice of any of the tip credit provisions to plaintiffs.  Pls.' Statement ¶ 21; Defs. Statement ¶ 21.  Therefore they may not take a tip credit

---

[5] The minimum cash wage was $4.65 until December 31, 2010, $5.00 until December 30, 2015, and $7.50 thereafter.  12 N.Y.C.R.R. § 137-1.5(e); id. § 146-1.2(a) (effective Dec. 31, 2015).  Defendants argue that NYLL section 652(4) permits a cash wage that is two-thirds of the minimum wage.  Siegert Decl. ¶ 9.  This is incorrect.  Section 652(4) states that the cash wage must be "at least two-thirds of the minimum wage rates set forth in [§ 652(1)] . . . or seven dollars and fifty cents, whichever is higher . . . provided no other cash wage is established [in a minimum wage order]."  Ultimately, however, the minimum cash wage is irrelevant, as defendants did not provide the notice required to take a tip credit.

under the FLSA or the NYLL. Defendants argue that, because "Kim controlled all of the tips, disbursed them in a manner and amount known only to her, and excluded the employer from any pertinent information," they should not be bound by the notice requirement. Siegert Decl. ¶ 11. According to defendants, they "never had any information to pay the difference between wages paid and minimum wages if there was a deficiency." Id. This is not an adequate excuse. Defendants cannot abdicate their responsibility to pay their workers the minimum wage by delegating tip distribution to one of their employees. Assuming Kim did have exclusive control and knowledge of tip arrangements, it was improper for defendants to take a tip credit—they could not have known whether plaintiffs were receiving the minimum wage without knowing how much they were receiving in tips. Defendants cannot escape liability through willful ignorance.

In sum, there is no genuine issue of material fact as to whether defendants provided tip credit notice to plaintiffs. They did not. Defendants may not, therefore, count plaintiffs' tips towards the minimum wage. Given that, defendants are liable for failing to pay plaintiffs the minimum wage. Even taking the facts in the light most favorable to defendants—assuming plaintiffs only worked ten paid hours on a full day and six on a half day, and factoring in the days where plaintiffs made $100 for working in the kitchen—plaintiffs still were not paid the minimum wage. I therefore grant summary judgment as to liability on this claim.

### 3. Overtime

Plaintiffs argue that they were not paid the appropriate overtime rate for weeks that they worked over forty hours. I agree that defendants failed to pay plaintiffs overtime pay. As with the defendants' minimum wage violations, the exact amount of underpayment depends on how many hours of each shift constituted paid work, and so cannot be resolved on summary judgment.

Both the FLSA and the NYLL require that an employee receive at least one and one-half times her regular rate for any hours she works over forty in a week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R.

§ 146-1.4. Defendants do not claim that they paid plaintiffs the overtime premium when they worked over forty hours. Instead, they argue that (1) Kim was exempt and (2) "Wu and Lee . . . rarely worked in excess of 40 hours per week." Siegert Decl. ¶ 2. As described above, Kim was not exempt and thus is entitled to overtime pay. And even if Wu and Lee rarely worked over forty hours, they were still entitled to overtime pay when they did so. I therefore grant summary judgment as to liability on this claim.

### B. Spread of Hours

Plaintiffs have moved for summary judgment on their claim that defendants violated the NYLL's spread-of-hours pay requirement. For the reasons described below, I grant summary judgment on this claim.

"[T]he length of the interval between the beginning and end of an employee's workday" is called the spread of hours. 12 N.Y.C.R.R. § 146-1.6. It "includes working time plus time off for meals plus intervals off duty." Id. For every day that the spread of hours is over ten, the employee is entitled to "one additional hour of pay at the basic minimum hourly rate." Id. § 146-1.6(a). The basic minimum hourly rate is simply the regular minimum wage. See id. § 146-1.2; see also Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 260 (S.D.N.Y. 2008) (discussing an earlier but substantially similar version of the spread-of-hours requirement).

Defendants' only counterargument is that "plaintiffs did not work more than 10 hours in view of plaintiffs' counsel['s] failure to consider the 2 hours free time each day." Siegert Decl. at ¶ 10. According to defendants, plaintiffs were given two hours of uncompensated free time per twelve-hour shift. But it is clear from the text of the regulation that free time still counts towards the spread of hours. See 12 N.Y.C.R.R. § 146-1.6; Saigon Grill, 595 F. Supp. 2d at 260 ("The measure of the workday for this purpose is the number of hours from the time the employee starts his work until he finishes, including both work time and non-working time."). There is no dispute that plaintiffs' full-

day shifts ended twelve hours after they began.  Plaintiffs are therefore entitled to an hour's pay at their minimum rate for every day that they worked a full shift.

### C.  Written Notice of Pay Conditions Under New York Labor Law Section 195(1)

Plaintiffs Wu and Lee have moved for summary judgment on their claim that defendants violated the NYLL's requirement that they provide written notice of plaintiffs' conditions at the time of hiring.[6]  For the reasons described below, I grant summary judgment on this claim.

At the time Wu and Lee were hired, NYLL section 195(1) required that employers provide their employees written notice "at the time of hiring and on or before Feb. 1 each subsequent year" of certain facts about the employee's pay conditions.  Specifically, employers were required to provide notice of: (1) the rate of pay and basis thereof (e.g., hour, shift, salary), (2) any allowances claimed as part of the minimum wage, including tip allowances, (3) the regular pay day, (4) the name of the employer, (5) any "doing business as" names of the employer, (6) the address of the employer's main office and a mailing address if different, and (7) the telephone number of the employer.  N.Y. Lab. Law § 195(1)(a) (effective Apr. 9, 2011 to Dec. 28, 2014), amended by 2014 N.Y. Sess. Laws, ch. 537 (A. 8106-C).

Under the version of section 195(1) in effect when Wu and Lee were hired, an employer who does not provide such notice within ten business days of the employee's first day of employment must pay her "fifty dollars for each work week that the violations occurred or continue[d] to occur, . . . not to exceed a total of two thousand five hundred dollars."  Id. § 198(1-b) (effective Apr. 9, 2011 to Feb. 26, 2015), amended by 2014 N.Y. Sess. Laws, ch. 537 (A. 8106-C), 2015 N.Y. Sess. Laws, ch. 2 (S. 1319), and 2015 N.Y. Sess. Laws, ch. 362 (S. 1).

---

[6] Although the operative complaint suggests that all three plaintiffs brought claims under section 195(1), the motion for summary judgment says only that Wu and Lee are entitled to damages on this claim.  This is presumably because Kim was hired before the notice requirement took effect on April 11, 2011.

Defendants concede that "the notices required under [N.Y. Labor Law] § 195(1) were not provided to employees at any time." Siegert Decl. ¶ 5. They state that "[w]hile it does not appear to be a legal defense, as is often the case with small companies and their operators, these two defendants were simply unaware of this obscure law." Id. Under section 198(1-b), it is an affirmative defense to a violation of section 195(1) if: "(i) the employer made complete and timely payment of all wages due" under articles 6, 19, or 19A "to the employee who was not provided [the required] notice . . . or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice." N.Y. Lab. Law § 198(1-b).[7] Defendants do not argue—at least not explicitly—that they are entitled to either of section 198(1-b)'s affirmative defenses. Even if they had, however, their arguments would fail.

There is no genuine dispute that defendants failed to provide the required notice. Siegert Decl. ¶ 5. Nor is there a genuine dispute that defendants failed to make complete and timely payment of all wages due. See supra Sections I.A-C. Finally, there is no genuine dispute that defendants did not reasonably believe in good faith that they were not required to provide notice. Plaintiffs may show that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo, 22 F.3d at 1224 (citing Celotex, 477 U.S. at 325). This they have done by pointing out that defendants did not consult an attorney or other expert, or attend any trainings to learn about their labor law obligations. The burden then shifted to defendants to "come

---

[7] I assume without deciding that these affirmative defenses were available to defendants for conduct that occurred before February 27, 2015. The version of section 198(1-b) in effect until February 27, 2015 stated that these defenses were available in actions "to recover damages for violation of paragraph (d)" of section 195(1). This, however, appears to have been a typographical error on the part of the legislature—it should have said paragraph (a). Paragraph (a) is the one that requires written notice of conditions of employment. Paragraph (d), as the legislature noted in correcting the statute, "does not relate to any conduct that could result in a violation." N.Y. Assembly, Mem. Supp. Legislation, A. 3090, at 1. Amendments that clarify what a statute was always meant to say are typically given retroactive effect, which would make these defenses available to defendants for violations occurring in 2011 and 2012. See In re Gleason, 749 N.E.2d 724, 726-27 (N.Y. 2001). Even were the defenses available, however, defendants do not satisfy either.

forward with specific facts showing that there is a genuine issue for trial." <u>LaBounty</u>, 137 F.3d at 73. The fact that they "were simply unaware of this obscure law" or that they posted a some sort of wage chart for their employees is not sufficient. Even taking the facts in the light most favorable to the defendants, they made no effort to understand their labor law obligations and therefore had no reasonable basis for failing to provide their employees with notice.

Plaintiffs Wu and Lee are entitled to summary judgment on their section 195(1) claim. And, because the violations continued for over fifty work weeks, they are each entitled to $2,500 in damages.

### D. Wage Statements Under New York Labor Law Section 195(3)

Plaintiffs have moved for summary judgment on their claim that defendants violated the NYLL's requirement that they provide wage statements with each wage payment. For the reasons described below, I grant summary judgment on this claim.

NYLL section 195(3) requires employers to "furnish each employee with a statement with every payment of wages" that summarizes key information about the employee's compensation. Specifically, the statement must list: (1) the dates of work covered by that wage payment, (2) the name of employer, (3) the address and phone number of employer, (4) the rate(s) of pay and basis thereof (e.g., hour, shift, salary), (5) the gross wages, (6) any deductions, (7) any allowances, (8) the net wages, and (9) the regular and overtime rates of pay and the number of regular versus overtime hours worked (if the employee is not exempt). N.Y. Lab. Law § 195(3).[8]

An employer who does not provide such statements must pay the employee $100 "for each work week that the violations occurred or continue[d] to occur . . . not to exceed" $2,500. N.Y. Lab. Law § 198(1-d) (effective Apr. 9, 2011 to Feb. 26, 2015), <u>amended by</u> 2014 N.Y. Sess. Laws, ch. 537

---

[8] Before April 9, 2011, section 195(3) required only that the wage statement list gross wages, deduction, and net wages. N.Y.L.L. § 195(3) (effective Oct. 26, 2009 to Apr. 8, 2011).

(A. 8106-C), 2015 N.Y. Sess. Laws, ch. 2 (S. 1319), and 2015 N.Y. Sess. Laws, ch. 362 (S. 1). As of Febuary 27, 2015, that penalty increased to $250 per work day, with total damages not to exceed $5,000. 2014 N.Y. Sess. Laws, ch. 537 (A. 8106-C); <u>see also</u> N.Y. Lab. Law § 198(1-d).

Defendants "do not contest that wage statements required under NYLL § 195(3) were not provided to employees." Siegert Decl. ¶ 6. As with the notice-of-pay-conditions requirement, it is an affirmative defense to a violation of section 195(3) if: "(i) the employer made complete and timely payment of all wages due" under articles 6, 19, or 19A "to the employee who was not provided statements as required by [section 195(3)] . . . or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with statements pursuant to [section 195(1)(e)]." N.Y. Lab. Law § 198(1-d). For the reasons discussed in Section I.C, defendants cannot use either of these defenses. There is no genuine dispute that defendants did not provide the required wage statements, that they did not pay all of the wages due to plaintiffs, and did not reasonably believe in good faith that they were not required to provide wage statements.

Because no reasonable factfinder could find in favor of defendants, plaintiffs are entitled to summary judgment on their section 195(3) claims. They are each entitled to the statutory maximum of $5,000. Each worked for over twenty-five weeks without receiving a wage statement before February 27, 2015, entitling them to $2,500. And each worked for another ten days without receiving a wage statement between February 27, 2015, and the end of their employment with defendants, entitling them to the remaining $2,500 of the statutory maximum.

## II. Other Issues

### A. Statute of Limitations

Plaintiffs argue that a three-year statute of limitations should apply to their FLSA claims. For the reasons discussed below, I deny summary judgment on this issue.

16

The default limitations period for FLSA claims is two years, but an additional year is added if the employer willfully violated the FLSA. 29 U.S.C. § 255(a). A violation is willful if the employer "either [knows] or show[s] reckless disregard for the matter of whether its conduct was prohibited by statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Negligence is not enough, nor is simple unreasonableness. Id. at 133, 134 n.13. The employee bears the burden of showing willfulness. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999).

Plaintiffs argue that defendants' violations were willful because defendants did not consult with an attorney or other expert or attend workshops or seminars to learn about applicable labor laws. Mem. of Law in Supp. of Pls.' MSJ ("Pls.' Mem. of Law"), ECF No. 63-3, at 16. In addition, plaintiffs argue that defendants did not know how to calculate overtime, did not know about spread-of-hours compensation, and did not know the requirements of the FLSA exemptions. Id. Defendants' argument that they were not willful boils down to their claim that they did not violate the minimum wage and overtime provisions at all and that they posted a wage chart at the restaurant. Siegert Decl. ¶ 10; Mr. Koo Decl. ¶ 11. Mr. Koo also says that "[i]t is very difficult for small business people . . . to comply with the hundred of laws affecting a restaurant." Mr. Koo Decl. ¶ 12.

Defendants were certainly careless about whether they were complying with the FLSA. But because plaintiffs have the burden of showing willfulness and because I must draw all reasonable inferences in favor of defendants, I cannot conclude that defendants were willful rather than simply negligent or unreasonable. Summary judgment on this issue is therefore inappropriate.

### B. Liquidated Damages

Plaintiffs argue that they are entitled to liquidated damages in an amount equal to their actual damages. For the reasons discussed below, I grant summary judgment on this issue.

Under the FLSA, a plaintiff is entitled to liquidated damages equal to her actual damages for unpaid minimum wages or unpaid overtime. 29 U.S.C. § 216(b) ("Any employer who violates [29

U.S.C. §§ 206-07] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." ). Similarly, under NYLL, a plaintiff is entitled to liquidated damages equal to the amount that she was underpaid. N.Y. Labor Law § 663(1) ("If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments . . . [and] an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due." ). Liquidated damages serve both compensatory and punitive purposes. Chowdhury v. Hamza Express Food Corp., 666 Fed. App'x 59, 61 (2d Cir. 2016).

To avoid paying liquidated damages, an employer must demonstrate that it acted in good faith and had reasonable grounds for believing it was complying with the law. 29 U.S.C. § 260; N.Y. Lab. Law § 663(1). This analysis is the same under both the FLSA and NYLL. See Chowdhury, 666 Fed. App'x at 61. The burden on the employer is a difficult one: "double damages are the norm and single damages the exception." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). To escape liability for liquidated damages, the employer must show that it acted in good faith, meaning it "took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" Barfield, 537 F.3d at 150 (quoting Herman, 172 F.3d at 142). In addition, the employer must show that its good faith actions were objectively reasonable. Herman, 172 F.3d at 142-43.

Plaintiff may not, however, recover liquidated damages under both the FLSA and the NYLL. Chowdhury, 666 Fed. App'x at 61. As the Second Circuit observed, "the NYLL and FLSA liquidated damages provisions are identical in all material respects, serve the same functions, and redress the same injuries." Id. Moreover, "New York's law does not call for an award of New York liquidated damages over and above a like award of FLSA liquidated damages." Id. at 60. In cases where plaintiffs

could obtain liquidated damages under either the FLSA and NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery. See, e.g., Ming Hui v. Shorty's Seafood Corp., No. 15-cv-7295, 2017 WL 5054401, at *8 (E.D.N.Y. Sept. 6, 2017); Mahoney v. Amekk Corp., No. 14-cv-4131, 2016 WL 6585810, at *15 (E.D.N.Y. Sept. 30, 2016), R. & R. adopted, 2016 WL 6601445 (Nov. 7, 2016); Chuchuca v. Creative Customs Cabinets Inc., No. 13-cv-2506, 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2014).

Plaintiffs are entitled to liquidated damages. Plaintiffs allege that defendants made no effort to "ascertain the dictates of the FLSA" or the NYLL, or to comply with those laws. Pls.' Mem. of Law at 17, 21. Plaintiffs and defendants cite the same facts as they do on the question of defendants' willfulness. See supra Section II.A. Here, however, the burden cuts the other way. Defendants must demonstrate they acted in good faith and with reasonable grounds to avoid liquidated damages. Plaintiffs have shown that there is little to no evidence of defendants' reasonableness or good faith— there is no evidence of consultations with attorneys or research into labor law requirements, for example. Defendants, in turn, have not "come forward with specific facts showing that there is a genuine issue for trial." LaBounty, 137 F.3d at 73. Even drawing all inferences in defendants' favor, no reasonable jury could find that they acted reasonably and in good faith in attempting to comply with their obligations under the FLSA or the NYLL. Plaintiffs are therefore entitled to summary judgment on the issue of liquidated damages.

### C. Individual Liability

Plaintiffs argue that both Mr. Koo and Mrs. Koo are employers under the FLSA and NYLL and can therefore each be held individually liable for plaintiffs' damages. For the reasons discussed below, I grant summary judgment as to Man Suh Koo and deny it as to Myong Ja Koo.

Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition is to be construed

broadly, as "the remedial nature of the [FLSA] . . . warrants an expansive interpretation of its provisions." Herman, 172 F.3d at 139. An employee may have more than one employer. 29 C.F.R. § 791.2(a). When there are multiple employers, "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act." Id. Any employer can be held liable under the FLSA for unpaid minimum wages, overtime, and liquidated damages. 29 U.S.C. § 216(b). The same is true under New York law—the test for who is an employer under the NYLL is generally accepted to be coextensive with the test under the FLSA. See Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).[9]

In determining whether an individual is an employer, the court must consider "the circumstances of the whole activity." Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947). "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." Herman, 172 F.3d at 139 (citations omitted). "Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)). This test is not a rigid one, however—satisfaction of these factors is sufficient but not necessary to establish an employer-employee relationship. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 71 (2d Cir. 2003).

---

[9] In Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013), the Second Circuit declined to opine on whether the standards are actually the same. Id. at 117. The court noted that the New York Court of Appeals had not yet answered the question and that the settlement agreement in that particular case might make it unnecessary to decide whether Catsimatidis was an employer under the NY Labor Law. Id.

The Second Circuit recently elaborated on this analysis in Irizarry. First, an individual is more likely to be an employer if he or she has "operational control" over the employees, meaning that "his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." Id. at 110. Second, "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees." Id. at 111. In Irizarry, the court held that the individual—John Catsimatidis, the president and CEO of Gristede's Foods, Inc.—was an employer under the FLSA. Id. at 117. It was a "close case," id. at 116, the court said, but pointed to the fact that Catsimatidis exercised his control over the company by visiting individual stores, id. at 113, dealing "with customer complaints, in-store displays and merchandising, and the promotion of store personnel," id. at 116, and bearing "ultimate responsibility for the plaintiffs' wages," id. at 117.

Defendants appear to concede that Mr. Koo is an employer under the FLSA and NYLL. They acknowledge that during the relevant time period he "oversaw the operations of the business on a daily basis," Siegert Decl. ¶ 1 n.1, and had "full operational control," Mrs. Koo Decl. ¶ 3. He supervised and controlled the conditions of employment, maintained employment records, and had the power to hire and fire employees. Pls.' Mem. of Law at 18; Ex. Y at 20:23-24. And he has a fifty-percent ownership interest in the restaurant. Id. There is no genuine dispute that Mr. Koo had operational control over the employees—defendants admit as much. Even taking the remaining facts in the light most favorable to defendants, no reasonable jury could find that he did not have and exercise the power to "directly affect the nature or conditions of the employees' employment," Irizarry, 722 F.3d at 110. Plaintiffs are therefore entitled to summary judgment on the issue of whether Mr. Koo is an employer under the FLSA and NYLL.

Defendants argue vigorously that Mrs. Koo is not an employer under the FLSA or NYLL. Like Mr. Koo, she was a fifty-percent owner in the business at least through June 2016. Both sides

agree that she managed the restaurant from 1998 to 2000, that she signed the lease and the liquor license, and that she is the registered agent of the business with the New York State Department of State. She also has authority to sign company checks and has signed at least some of the corporate tax returns.[10]

She spends time at the restaurant three to seven days a week, which defendants contend is purely for social purposes. Mrs. Koo Decl. ¶¶ 8-9. The parties dispute whether Mrs. Koo exercised any meaningful control over employees on her visits to the restaurant. Plaintiffs state that Mrs. Koo "supervised and controlled the conditions of employment by instructing Kim or Patricia Koo, both employees of [Natural Tofu Restaurant Corp.], to address issues whenever the employees did something wrong." Pls.' Mem. of Law at 18. Defendants disagree: Mrs. Koo says that "[i]f there was something wrong, [she] may have called it to the attention of Kim or a family member, but [she] didn't instruct or dictate." Mrs. Koo Decl. ¶ 9. And, while plaintiffs claim that Mrs. Koo has set wages and hired and fired employees in the past, defendants state that she has not done so since 2000. There is therefore a genuine dispute over the extent to which Mrs. Koo had operational control over the restaurant from 2010 to 2016. For this reason, summary judgment is not appropriate on the issue of whether she is an employer under the FLSA and NYLL.

## CONCLUSION

I grant plaintiffs' summary judgment motion in part and deny in part. I hold that plaintiffs have established liability on their minimum wage, overtime, spread of hours, and notice claims. I further hold that plaintiffs have established damages on their spread of hours and notice claims. In addition, I hold that plaintiffs have established that they are entitled to liquidated damages on all of

---

[10] Plaintiffs state that she "continues" to do so, Pls.' Mem. of Law at 19, while defendants suggest that she has not done so for the past seven years, Mrs. Koo Decl. ¶ 4.

their claims and that Mr. Koo can be held individually liable.  On the other hand, plaintiffs have not established that Mrs. Koo can be held individually liable, or that the FLSA statute of limitations should be three years.  Nor have they established the amount of damages they are owed for their minimum wage and overtime claims.  These issues remain to be decided at trial.

So ordered.

Date:   February 20, 2018                                       _____s/ Allyne R. Ross_____
        Brooklyn                                                Allyne R. Ross
                                                                United States District Judge